UNITED STATES DISTRICT COURT
EASTERN DISRICT OF NEW YORK
------------------------------------------------------------------- X

STEPHEN ROCCO,

                            Plaintiff,

              -against-

STAR & SON ELECTRIC SUPPLY CO., INC., LORIAN
ELECTRIC SUPPLY CORP., BRIAN PARTMAN,
MITCHELL PARTMAN, and HOWARD ELMAN,

                            Defendants.

Civil Case No. 22-5637

**COMPLAINT**

**JURY DEMAND**

------------------------------------------------------------------- X

        Plaintiff, by his undersigned attorneys, as and for his Complaint, alleges as follows:

## **INTRODUCTION**

        1.       This is an action sounding in civil violation of the RICO Act, breach of contract, and violation of New York labor law filed by Plaintiff, a former contractor who was hired by the individual defendants to procure sales of electrical and other goods for the corporate Defendants.

        2.       As stated more fully below, the Defendants maintained a corrupt enterprise that sought to bribe purchasing agents at several customer companies Plaintiff had brought in as accounts, to the diminution of Plaintiff's earned commission. As part of that enterprise, the Defendants reneged on promises to pay the Plaintiff his earned commission on his sales.

## **JURISDICTION**

        3.       This Court's jurisdiction is invoked pursuant to 29 U.S.C. Section 1331, and 18 USC § 1964. This Court's pendent jurisdiction is also invoked.

## PARTIES

4. Plaintiff Stephen Rocco was at all relevant times a contractor employed by Lorian Electric Company Inc. and Star & Son Electric Supply Co., Inc. and resides in Sullivan County, New York.

5. Defendant Star & Son Electric Supply Co., Inc., sued herein as Star Electric Supply Co., Corp., (hereinafter "Star II") was and still is a domestic business corporation, duly authorized to conduct business in the state of New York, with its principal office located at 39-29 23rd Street, Long Island City, New York 11101.

6. Defendant Lorian Electric Supply Corp., also known as Star Electric Supply Co., (hereinafter "Star I") was and still is a domestic business corporation, duly authorized to conduct business in the State of New York, with its principal office located at 39-29 23rd Street, Long Island City, New York 11101.

7. Defendant Brian Partman owns in part Star I and Star II and is the CEO and President of Star I and Star II. He resides at 86 Howe Court, Woodmere, New York 11598.

8. Defendant Mitchell Partman owns in part or in whole Star I and Star II and is an officer in Star I and Star II. He resides at 86 Howe Court, Woodmere, New York 11598.

9. Defendant Howard Elman owns in part Star I and Star II and is an officer and principal shareholder in Star I and Star II. He resides at 9 Henhawk Lane, Roslyn, New York 11576.

10. All of the Defendants are engaged in interstate commerce, to wit, the Defendants are directly engaged in the acquisition and distribution of electrical equipment procured internationally and/or across state lines, and used in construction projects in New York State.

## NON-PARTY ENTITIES AFFILIATED WITH THE DEFENDANTS

11. Warshaw Inc. is a holding company owned and/or controlled by Defendant Elman, that directs the operations of the vending companies described in paragraphs 12, 13, and 14, and that takes direction from the Defendants. Its principal office is at 63-15 Traffic Ave, Ridgewood, NY 11385.

12. South Conduit is a vendor of electrical equipment and supplies that is a subsidiary of Warshaw Inc. and is owned and/or controlled by Defendant Elman. Its principal office is at 63-15 Traffic Ave, Ridgewood, NY 11385.

13. GBOX is a vendor of electrical equipment and supplies that is a subsidiary of Warshaw Inc. and is owned and/or controlled by Defendant Elman. Its principal office is at 63-15 Traffic Ave, Ridgewood, NY 11385.

14. Navtech is a vendor of electrical equipment and supplies that is a subsidiary of Warshaw Inc. and is owned and/or controlled by Defendant Elman. Its principal office is at 63-15 Traffic Ave, Ridgewood, NY 11385.

15. Global Manufacturing is a vendor of electrical equipment and supplies that is a subsidiary of Warshaw Inc. and is owned and/or controlled by Defendant Elman. Its principal office is at 63-15 Traffic Ave, Ridgewood, NY 11385.

## FACTS RELEVANT TO ALL CLAIMS

16. Defendants Elman, Brian Partman, Mitchell Partman, Star I, and Star II together with employees, officers and directors of Star I and Star II maintained an association for the common and continuing purpose to increase sales to customers through commercial bribery that was in clear violation of New York Penal Law § 180.03 as described more fully below, that constitutes conduct that was a continuing pattern of racketeering activity.

17. On or about August 2016 Defendant Elman offered Plaintiff to become a salesman for Star I and Star II and directed him to Defendant Brian Partman.

18. Defendant Elman described Defendant Brian Partman to the Plaintiff as his business partner.

19. Defendant Elman sent Plaintiff to meet Defendant Brian Partman at 719 Hempstead Turnpike, Franklin Square, New York 11010.

20. Thereafter Defendants Brian Partman and Mitchell Partman on behalf of Star I and Star II hired Plaintiff as an independent contractor to solicit new accounts for Star I and Star II.

21. Defendants Elman, Brian Partman, and Mitchell Partman initially offered Plaintiff commissions at 9% of Plaintiff's gross sales.

22. Plaintiff established new accounts and generated substantial business for Defendants.

23. Plaintiff would typically interact directly with the principal owners of these companies to generate sales for Defendants.

24. Defendants Elman, Brian Partman, and Mitchell Partman thereafter on the first commission payment to plaintiff deliberately, intentionally, and unilaterally reduced Plaintiff's commission compensation to 4½% of gross sales.

25. Plaintiff was paid a 4½% commission for several accounts but Plaintiff's payments were routinely delayed or denied outright.

26. Plaintiff repeatedly requested to be copied on all sales orders on his accounts so he could determine the commissions he was owed but the Defendants failed and refused to provide the requested documents or to provide an accounting to Plaintiff of the sales generated by the Plaintiff.

27. Defendants Elman and Brian Partman promised to provide the requested sales orders to Plaintiff, but the Defendants stalled and ignored Plaintiff's requests to be copied on all invoices sent to his accounts.

28. Defendant Elman was advised by Plaintiff that Plaintiff was being denied the payment of earned commissions and Defendant Elman lied to the Plaintiff by claiming it was simply a mistake by the other Defendants.

29. In several conversations where Plaintiff sought information about his denied commission Defendant Elman denigrated Plaintiff's practice of generating sales though principal owners and indicated sales should be sought through the purchasing agents of companies Plaintiff was interacting with.

30. Furthermore, during the course of these conversations Defendant Elman admitted to Plaintiff that he and the other Defendants regularly bribed purchasing agents at companies they did business with to generate sales.

31. Defendant Elman also admitted to Plaintiff that the Defendants were in the process of shifting sales generation away from the principal owners at the accounts Plaintiff had brought in and to the purchasing agents through bribes of drugs and money.

32. Defendant Elman also suggested to Defendant that he should unilaterally reduce his own commission to aid in the bribery of these purchasing agents.

33. To wit, Defendant Elman admitted, or Plaintiff otherwise learned, of three distinct schemes to bribe purchasing agents at three different companies Plaintiff had brought in as accounts. Plaintiff also learned of other similar bribery schemes involving companies that were not his accounts.

34. On or about October 30, 2019, Plaintiff learned that Defendants were bribing the principal purchasing agent of Topshelf, an account he had initially brought in, without the consent or knowledge of the ownership of Topshelf, in an effort to shift more business to Star I and Star II, as well as the nonparty affiliated entities. The benefit conferred to the purchasing agent exceeded $1000 and harmed Topshelf in an amount exceeding $250, by diverting business away from lower cost competitors and/or causing Topshelf to incur costs it would not have otherwise incurred.

35. The scheme to increase sales to Topshelf through bribery was a clear violation of New York Penal Law § 180.03 which prohibits commercial bribery.

36. Defendant Elman directly suggested Plaintiff participate in the scheme to bribe Topshelf's purchasing agent by reducing his commission and using that money to pay the purchasing agent.

37. On information and belief, Defendants' scheme to bribe the purchasing agent at Topshelf continues to this day.

38. On information and belief, when Plaintiff refused to participate, Defendants unilaterally reduced Plaintiff's commission and used those funds to bribe Topshelf's principal purchasing agent.

39. On or about October 30, 2019, Plaintiff learned that Defendants were bribing the principal purchasing agent of ASK, an account he had initially brought in, without the consent or knowledge of the ownership of ASK, in an effort to shift more business to Star I and Star II, as well as the nonparty affiliated entities. The benefit conferred to the purchasing agent exceeded $1000 and harmed ASK in an amount exceeding $250, by diverting business away from lower cost competitors and/or causing ASK to incur costs it would not have otherwise incurred.

6

40. The scheme to increase sales to ASK through bribery was a clear violation of New York Penal Law § 180.03 which prohibits commercial bribery.

41. Defendant Elman directly suggested Plaintiff participate in the scheme to bribe ASK's purchasing agent by reducing his commission and using that money to pay the purchasing agent.

42. On information and belief, Defendants' scheme to bribe the purchasing agent at ASK continues to this day.

43. On information and belief, when Plaintiff refused to participate, Defendants unilaterally reduced Plaintiff's commission and used those funds to bribe ASK's principal purchasing agent.

44. In or around January 2019, Plaintiff learned that Defendants were bribing the principal purchasing agent of Freedom Electric, an account he had initially brought in, without the consent or knowledge of the ownership of Freedom Electric, in an effort to shift more business to Star I and Star II, as well as the nonparty affiliated entities.  The benefit conferred to the purchasing agent exceeded $1000 and harmed Freedom Electric in an amount exceeding $250, by diverting business away from lower cost competitors and/or causing Freedom Electric to incur costs it would not have otherwise incurred.

45. The scheme to increase sales to Freedom Electric through bribery was a clear violation of New York Penal Law § 180.03 which prohibits commercial bribery.

46. Defendant Elman directly suggested Plaintiff participate in the scheme to bribe Freedom Electric's purchasing agent by reducing his commission and using that money to pay the purchasing agent.

47. On information and belief, Defendants' scheme to bribe the purchasing agent at Freedom Electric continues to this day.

48. On information and belief, when Plaintiff refused to participate, Defendants unilaterally reduced Plaintiff's commission and used those funds to bribe Freedom Electric's principal purchasing agent.

49. On information and belief, the aforedescribed bribery schemes form a common plan to increase the sales of equipment from Star I and Star II and enrich the Defendants.

50. Defendants Elman, Brian Partman, and Mitchell Partman repeatedly, falsely denied activity on some of Plaintiff's accounts when in fact they were generating substantial business.

51. By the actions of Defendants Elman, Brian Partman, Mitchell Partman and with the knowledge of the other Defendants the contract for the payment of commissions to the plaintiff was repeatedly breached.

52. Defendants Elman, Brian Partman, and Mitchell Partman continued to falsely and intentionally deny sales activity on some of Plaintiff's accounts to deny Plaintiff his earned commissions.

53. Upon information and belief Defendants would keep the commissions for themselves or use portions of those unpaid commissions to bribe purchasing agents to generate business.

54. As recently as February 8, 2021, the Defendants deliberately and intentionally continued to not pay full commissions to Plaintiff despite their agreement with Plaintiff to pay him earned commissions and kept the commissions for themselves or used them to bribe purchasing agents.

55. The Plaintiff had no other alternative but to resign on March 4, 2021, as a result of all of the foregoing.

## AS FOR A FIRST CAUSE OF ACTION
## (Federal Civil RICO, 18 USC § 1962(c))

56. Plaintiff repeats and realleges all of the allegations contained in all the preceding paragraphs as if fully set forth herein.

57. Defendants Elman, Brian Partman, Mitchell Partman, Star I, and Star II violated RICO and Plaintiff was injured as a result from the reduction of his commissions.

58. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC § 1961(3).

59. Each Defendant violated 18 USC § 1962(c) by the acts described in the prior paragraphs, and as further described below.

60. <u>The Enterprise</u>. Defendants Elman, Brian Partman, Mitchell Partman, Star I, and Star II together with employees, officers and directors of Star I and Star II form an association in fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 USC § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

61. The enterprise had engaged in and their activities have affected foreign and interstate commerce.

62. <u>Pattern of Racketeering Activity</u>.  Defendants, each of whom are persons associated with, or employed by the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 USC §§ 1961(1), 1965(5), and 1962(c).  The racketeering was made possible by Defendants' regular and repeated use of facilities and services of the enterprise.  Defendants had specific intent to engage in the substantive RICO violations alleged herein.

63. Predicate acts or racketeering activity are acts which are indicatable under New York Penal Law § 180.03, as more specifically alleged above and below.  Defendants each committed at least two such acts or else aided and abetted such acts.

64. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission.  Further, the acts of racketeering by Defendants have been continuous.  There was repeated conduct during a period of time beginning at least in 2019, when Plaintiff discovered the bribery schemes, and continuing to the present, and there is a continued threat of repetition of such conduct.

65. The association in fact enterprise, as alleged herein, was not limited to the predicate acts and extended beyond racketeering activity.  Rather, they existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of providing electrical supplies to customers.  Defendants have had, and do have, on information and belief, legitimate business plans outside the pattern of racketeering activity.

66. <u>Predicate Act</u>.  As described above, Defendants carried out, and continue to carry out, a scheme to increase sales to Topshelf, without the knowledge of and to the financial

detriment of the management of Topshelf, through commercial bribery in violation of New York Penal Law § 180.03 which prohibits commercial bribery.

67. <u>Predicate Act</u>.  As described above, Defendants carried out, and continue to carry out, a scheme to increase sales to ASK, without the knowledge of and to the financial detriment of the management of ASK, through commercial bribery in violation of New York Penal Law § 180.03 which prohibits commercial bribery.

68. <u>Predicate Act</u>.  As described above, Defendants carried out, and continue to carry out, a scheme to increase sales to Freedom Electric, without the knowledge of and to the financial detriment of the management of Freedom Electric, through commercial bribery in violation of New York Penal Law § 180.03 which prohibits commercial bribery.

69. <u>Continuity of Conduct</u>.  Defendants' violation of state law as set forth herein, each of which directly and proximately injured Plaintiff and other individuals, constituted a continuous course of conduct spanning from approximately 2019 to the present, which was intended to obtain money through commercial bribery, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 USC §§ 1961(1) and 1961(5).

70. Upon information and belief, Defendants have conducted, and/or participated directly, and/or indirectly, in the conduct of the affairs of the alleged enterprise through a pattern of racketeering as defined herein in violation of 18 USC § 1962(c).

71. As described above, Defendants unlawful actions have proximately caused injury to Plaintiff by reducing the amount and payment of commission he was entitled to from Defendants.  Plaintiff seeks and award of damages in compensation for the reduction and nonpayment of commissions.

72. Pursuant to 18 USC 1964(c) Plaintiff is entitled to treble damages in a sum to be determined. Plaintiff also seeks recovery of attorneys' fees and costs., as well as any other relief authorized by statute.

## AS FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

73. Plaintiff repeats and realleges all of the allegations contained in all the preceding paragraphs as if fully set forth herein.

74. Defendants Elman, Brian Partman, and Mitchell Partman promised the Plaintiff that he would be provided with a written contract as a commissioned salesman.

75. Defendants Star I and Star II agreed to pay Plaintiff according to the stated commission agreement.

76. Defendants unilaterally breached the agreement by not providing the Plaintiff a written contract as a commissioned salesman.

77. Defendants breached the contract with the Plaintiff by withholding and misrepresenting commissions that Plaintiff had earned and was owed and refused to account for and pay the actual amount of commissions due to the Plaintiff.

78. As a result of the breach of contract by the Defendants Plaintiff sustained damages equal to the lost commission payments.

## AS FOR A THIRD CAUSE OF ACTION
### (Section 191-C of the New York Labor Law)

79. Plaintiff repeats and realleges all of the allegations contained in all the preceding paragraphs as if fully set forth herein.

80. The contract between the Plaintiff and the Defendants was terminated on March 4, 2021.

81. Prior to the termination of his job as a commissioned salesman of Star I and Star II the Plaintiff earned commissions that were due to him.

82. Defendants Star I and Star II failed to pay the Plaintiff the commissions that he had earned within five (5) days after termination or within five (5) business days after the commissions became due in the case of earned commissions due when the contract was terminated.

83. Plaintiff did not receive the commissions that he had earned from Defendants Star I and Star II within five (5) days after termination or within five (5) business days after the commissions became due in the case of earned commissions not due when the contract was terminated.

84. By reason thereof the Defendants Star I and Star II failed to comply with the provisions of Section 191-C of the New York Labor Law in that the Defendant Star failed to timely comply with the provisions of said section 191-C of the New York Labor Law.

85. Pursuant to section 191-C Plaintiff is entitled to double damages in a sum to be determined and an award of reasonable attorney fees, court costs, and disbursements

## DAMAGES

86. Plaintiff, as a result of Defendant's actions, suffered a loss commission, and has suffered emotional distress, in an amount exceeding $1 million.

87. By proceeding against Plaintiff as described hereinabove, Defendant acted with malice or in reckless disregard of Plaintiff's rights, entitling her to punitive damages in the amount of $2 million.

## JURY DEMAND

88. Plaintiff demands a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment:

1. Awarding Plaintiff an accounting of all lost commissions

2. Awarding Plaintiff all lost commission.

3. Awarding Plaintiff treble damages pursuant to 18 USC 1964(c).

4. Awarding Plaintiff double damages pursuant to section 191-C of the New York Labor Law.

5. Awarding Plaintiff punitive damages in the amount of $2 million.

6. Awarding Plaintiff attorneys' costs and fees.

7. Granting such other and further relief as is just and equitable.

Dated: New York, New York
September 21, 2022

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
Attorneys for Plaintiff

By:  /s/ *Arthur Z. Schwartz*
Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
Phone: (212) 285-1400
Fax: (646) 219-6569
E-mail: aschwartz@afjlaw.com